EUGENE VASSALLO AND GEORGIE VASSALLO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

VASSALLO, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27406, 27407. Filed January 19, 1955.

*Stewart Lynch, Esq.*, and *Harry Friedman, Esq.*, for the petitioners.
*Stephen P. Cadden, Esq.*, for the respondent.

660

OPINION.

RICE, *Judge:* On the opening day of the hearing in this case the respondent submitted a motion for judgment by estoppel, as to the fraud issue relative to petitioner Eugene Vassallo for the years 1943 to 1945, inclusive, and relative to the corporation for the fiscal years ended March 31, 1944 to 1946, inclusive, based on the conviction of petitioner in the United States District Court. The motion likewise sought judgment by estoppel as to the amount of tax for such years since the amounts thereof in the deficiency notice here were identical with the amounts set forth in the information on which petitioner was tried and convicted in the District Court. The petitioner objected to respondent's motion and we agreed to take it under advisement. On brief, respondent discussed only that part of his motion concerning the issue of fraud.

It is clear that petitioner's conviction under section 145 of the Internal Revenue Code of 1939 in the District Court is not res judicata in these proceedings as to the fraud issue or as to the amount of tax allegedly due. See *Helvering* v. *Mitchell*, 303 U. S. 391 (1938); *Michael Potson*, 22 T. C. 912 (1954); *David J. Pleason*, 22 T. C. 361 (1954), on appeal (C. A. 7, Dec. 13, 1954); *Henry H. Epstein*, 34 B. T. A. 925 (1936); and *Thomas J. McLaughlin*, 29 B. T. A. 247 (1933).

The District Court made no specific findings as to the amounts of income which the petitioner had received. It found only that petitioner Eugene Vassallo had knowingly filed or caused to be filed false and fraudulent returns with intent to evade taxes.

The petitioners attack the respondent's determination of the deficiencies here in issue principally on two grounds. First, they attempted to show that petitioner Eugene Vassallo had approximately

$100,000 in cash concealed in a small metal box at the beginning of 1941; and, second, insofar as the corporation is concerned, they attempted to reconstruct its income on the basis of actual sales from information supplied by the Delaware Liquor Control Commission as to the total volume of purchases and sales in bulk of wine, whisky, and beer during the years in issue.

We have carefully reviewed the testimony of petitioner and others with reference to the $100,000 of cash which he claimed to have had at the beginning of 1941. On the entire record before us, we do not believe such testimony. Petitioner was adjudged a bankrupt in 1940. The statement of assets and liabilities which he filed on April 22 of that year listed as his only asset a watch valued at $20. The record, of course, discloses that he, at that time, actually possessed substantial assets which were held for him in the names of others, in the approximate amount of $28,000. We do not believe that at that time he, in addition, possessed large sums of cash.

We are also unable to accept petitioner's computation of income for Vassallo, Inc., based on the bulk purchase and sale records. To be sure, petitioner introduced testimony as to the size of glass used for each kind of beverage served; the price charged at various times; the date during the 5-year period at which prices were increased because of the wartime cabaret tax; and the time during the day and evening when the largest number of customers was served. The mere recitation of these factors included in the computation makes obvious that a variation in even one or possibly all of them could materially affect the end result of a computation of income based thereon. The respondent also submitted a computation based on bulk purchase and sale figures substantially identical to those used by the petitioner, but with variations as to the price per drink and size thereof. His computation by this method showed income for each year substantially in excess of that so computed by the petitioner and, for all but 1 of the years, substantially in excess of the amount of income actually determined in the deficiency notices. On the whole record, we are satisfied that Vassallo's received the additional amounts of income as determined by respondent by use of the net worth and sources and expenditures methods.

Petitioners advanced two further objections to the respondent's determination of income for Eugene Vassallo and for the corporation. They admit, of course, that the returns filed by the corporation were on the cash basis, but argue that the respondent in reconstructing that income should have included inventories.

The comparative net worth method of determining income and the sources and expenditures method, used by respondent in determining Vassallo's income, are not systems of accounting. *Holland* v. *United States*, 348 U. S. 121 (1954); *Thomas A. Talley*, 20 T. C. 715 (1953).

Those methods are resorted to, as they were here, only because a taxpayer's books and records do not disclose his true income, nor is it possible to determine from such books and records what that income was. While we agree with petitioners that the respondent's reconstruction of Vassallo's income by such methods would have been more exact had its actual inventories been included, the respondent, under the authority granted him in section 41 of the Code, determined such income on the cash basis—the method which, in his opinion, most clearly reflected it. It was incumbent on the petitioners to show the amount of the inventories which they argue, if used, would more correctly reflect income. They made no such showing and we, therefore, approve the respondent's determination.

Insofar as petitioner is concerned, he argues that the large amounts of additional income which the respondent determined he received, supposedly as dividends from the corporation, should be reduced by the amount of tax liability and penalties which the corporation should have paid on its unreported income. He says this is so because dividends cannot be paid by a corporation until its tax liabilities have been satisfied. This argument is advanced despite the fact that petitioner each year actually withdrew the money from the corporation and spent it as he chose.

While no question of transferee liability has been raised in these proceedings, the argument advanced by petitioner is essentially no different in principle from that before us in *Bennett E. Meyers*, 21 T. C. 331 (1953), or before the Supreme Court in *Healy* v. *Commissioner*, 345 U. S. 278 (1953). In the *Meyers* case, the taxpayer's withdrawals from corporate earnings through the guise of officers' salaries, together with the amount of income tax liability accrued for the year, rendered the corporation insolvent. The Government proceeded against him as a transferee of the corporation and also against him individually on the theory that the withdrawals were income to him personally. The taxpayer there argued that the Government was estopped from asserting that the same money was taxable to him as personal income and taxable again to him as a transferee. That, in essence, is what the petitioner is arguing here; namely, that money withdrawn from the corporation, which should have been used to pay its tax liabilities, should not now be taxed both to the corporation and to him. Relying on the *Healy* case, we said in *Bennett E. Meyers, supra*, p. 347:

It is apparent that the distributions made here were received by petitioner under a claim of right and without any restrictions on the use of the money, and no contention is specifically made to the contrary. The decision of the Supreme Court, just discussed, fully supports the action of the respondent in including the amounts in taxable income of petitioner in the year of receipt * * *

Petitioner here is, therefore, liable for personal income taxes on the full amount withdrawn from the corporation, as respondent determined. Petitioner's argument with respect to taxing him on sums withdrawn from the corporation, but which should have been used to pay its tax liabilities, seems to stem from his feeling that great injustice results because that same money is taxed twice. Regrettable as this may be, a taxpayer, having adopted the corporate form to conduct his business activities, must accept the tax consequences which result therefrom. There is no question here but that Vassallo, Inc., was a bona fide corporation and carried on business as such. No argument, in fact, is advanced to the contrary; and, while it must pay tax on the full amount of its income, petitioner, also, must pay tax on the full withdrawals or "dividends" which he took from it. The disadvantage of his choice of doing business as a corporation is perhaps emphasized by the fact that he withdrew all of its earnings and must pay personal income taxes on the full amount thereof; but he received the money withdrawn under a claim of right and used it as he chose. It, therefore, was fully taxable income to him. *Healy* v. *Commissioner, supra.*

We have carefully reviewed the voluminous record of the trial in the District Court which was stipulated into evidence here. We are satisfied from the evidence presented there and from that adduced before us that petitioner filed fraudulent returns for each of the years in issue with intent to evade tax and that the corporation, through him, filed fraudulent returns for each of the fiscal years here in issue with intent to evade tax. The amounts of income unreported for petitioner and the corporation exceeded many times over that which was reported. That fact alone is, to us, highly persuasive evidence that the returns were fraudulent, *Lillian Kilpatrick*, 22 T. C. 446 (1954), on appeal (C. A. 5, Jan. 7, 1955). In addition, there is the fact of petitioner's criminal conviction for fraudulent evasion of taxes for 3 of the 5 years here in issue.

Insofar as the fraud penalty has been asserted on the basis of deficiencies in excess profits tax, petitioner argues that he did not know about such tax. A fair inference to be drawn from this record is that his knowledge of all tax matters was sketchy, but it is abundantly clear that the inadequate records of corporate income were deliberately maintained to evade the payment of the corporation's true tax liability for *any and all* taxes imposed on its income by the Federal Government. We are satisfied that a part of the deficiency, due to the corporation's failure to file any excess profits tax return, was due to fraud with intent to evade payment of that tax. The corporation's income and declared value excess-profits tax return in 3 of the 5

years here in issue showed a net operating loss, and income of only nominal amounts in the other 2 years when, in fact, it was many times greater. An attempt was made to demonstrate petitioner's abysmal ignorance of accounting and bookkeeping methods. It was alleged that he could not read or do other than write his own name and Arabic numerals. Be that as it may, he has been a resident of the United States since 1910 and from the record here it would seem that he has been a successful businessman during the years here in issue. Any man intelligent enough to earn that amount of income, must be presumed to be intelligent enough to make an honest effort to report it correctly and pay the tax thereon. Sometimes there are unusual circumstances which excuse a taxpayer's failure to meet the common standards required of all. In this record we find no such circumstances. Rather, we find a blatant disregard for the minimum responsibility required of every taxpayer and a willfully fraudulent and continuing effort to defeat and evade the payment of taxes due by him and by his corporation.

In view of our conclusion that the deficiencies of petitioner and his corporation were due in part each year to fraud with intent to evade tax, the issue with respect to the statute of limitation becomes moot.

We find nothing in this record constituting reasonable cause for Vassallo, Inc.'s, failure to file excess profits tax returns. We therefore, uphold respondent's assertion of a 25 per cent delinquency penalty for those years in which a return was not filed.

Petitioners argue that the respondent's computation of income and excess profits tax due from Vassallo's is incorrect, since in such computation no deduction was allowed for the amount of declared value excess-profits tax. They admit that no such tax was paid.

The deduction for declared value excess-profits tax allowed by section 23 (c) of the Code is for such tax as was "paid or accrued within the taxable year." Vassallo's filed its returns on the cash basis; and the respondent kept it on a cash basis in determining the deficiencies herein—that being the method which, in his opinion, most clearly reflected its income. Sec. 41, I. R. C., 1939. Clearly, a cash basis taxpayer is not entitled to a deduction for taxes not actually paid within the year, which was admittedly the case here. In any event, had Vassallo's been on the accrual basis, it still would not be entitled to accrue the amounts of declared value excess-profits taxes and so claim them as a deduction, since its liability for such taxes was in dispute. *Dixie Pine Co.* v. *Commissioner*, 320 U. S. 516 (1944); *Gunderson Bros. Engineering Corp.*, 16 T. C. 118 (1951).

*Decisions will be entered for the respondent.*