William Lusk and Lillian Lusk v. Commissioner.
Lusk v. Commissioner
Docket No. 40652.
United States Tax Court
T.C. Memo 1955-119; 1955 Tax Ct. Memo LEXIS 221; 14 T.C.M. (CCH) 435; T.C.M. (RIA) 55119; May 12, 1955
*221 1. Held, the Commissioner properly determined petitioners' net income, except for failing to make any allowance for depreciation for the years 1942 through 1945, in each of the taxable years involved. 2. Held, at least part of the deficiency in each of the taxable years 1942 to 1945, inclusive, was due to fraud with intent to evade tax. 3. Held, the statute of limitations has not run on any of the taxable years. 4. Held, petitioners are liable for 5 per cent additions to tax for the taxable years 1946 and 1947 under section 293(a)of the Internal Revenue Code of 1939. William Lusk, 5218 W. 30th Street, Cicero, Ill., pro se. Ray H. Garrison, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioners and additions to tax as follows: Section
Section
293(b)
293(a)
Additions
Additions
Year
Income Tax
to Tax
to Tax
1942
$ 1,856.15
$ 928.08
1943
832.44
416.22
1944
10,300.19
5,150.10
1945
33,071.41
16,535.21
1946
1,954.39
$97.72
1947
835.76
41.79
The issues for decision are: 1. Did petitioners understate *222 their net income in each of the taxable years as determined by the Commissioner. 2. Are petitioners liable for 50 per cent additions to tax for the years 1942 to 1945, inclusive, under section 293(b) of the Internal Revenue Code of 1939. 3. Are petitioners liable for 5 per cent additions to tax for the years 1946 and 1947 under section 293(a) of the Internal Revenue Code of 1939. 4. Is the assessment of the deficiency for any of the taxable years barred by the statute of limitations. Findings of Fact William Lusk, formerly known as William Zalusky, and Lillian Lusk were husband and wife who, during the taxable years involved, resided in Cicero, Illinois. They filed a joint income tax return for each of the taxable years involved with the collector of internal revenue for the first district of Illinois. William Lusk (hereinafter referred to as Lusk) was born in 1906. He and Lillian were married in 1932, divorced in 1933, remarried in 1934, and divorced again following Lillian's divorce suit filed in 1947. They have three children, the youngest being born in 1943. During the taxable years involved Lusk was engaged in selling automobiles, boats, motorcycles and farm machinery *223 in Cicero, Illinois. He did business under the name of "Cicero Boat & Motorcycle Sales" until 1946 when he changed the name of the business to "Outdoor Equipment Sales." In addition to the above business, petitioners operated a farm in Wayne County, Illinois. Petitioners received oil royalties and rental income and traded on the stock market. Lusk also made several inventions including a winch which a truck can use to pull itself out of the mire, a self-rocking baby cradle, a motor which can be adapted to many uses, and small power snippers. Neither of the petitioners kept formal books of account for any of the taxable years involved, and the only records available for the years 1942 to 1945, inclusive, were a police book purportedly showing the date of purchase and sale of used cars. Petitioners did not maintain records which clearly reflected their income for those years. Their records for 1946 and 1947 were incomplete and fragmentary, consisting of a cardboard box of unclassified bills, invoices, sales slips and the like. However, the Commissioner based his determination of petitioners' net income for the years 1946 and 1947 on these records. Petitioners did not have a checking *224 account. Lusk maintained a savings account at the Cicero State Bank, Cicero, Illinois. There was $1,015.15 and $30.10 in this account on December 31, 1941 and December 31, 1946, respectively. Petitioners rented a safety deposit box in the above bank beginning in 1936. During the years involved the box was entered frequently. The entries usually preceded a large expenditure of currency. Lusk maintained an account with the stock brokerage firm of Merrill Lynch, Pierce, Fenner & Beane throughout the taxable years involved. The petitioners had another account with that firm in their joint names in 1946 and 1947. Lusk made deposits in the above accounts and reinvested capital gains as follows: Year
Deposits
Capital Gains
1943
$ 4,055.39
1944
348.61
$ 6,325.42
1945
16,825.00
7,382.86
1946
47,836.53
10,951.34
$69,065.53
$24,659.62 Petitioners owned securities on December 31, 1946, for which they had paid $119,404.67. Lusk owned securities on December 31, 1941, costing $25,679.52. Petitioners purchased an 80-acre farm in Wayne County, Illinois, in 1938 for $4,000 and spent $1,200 on improving and furnishing it. In 1943 petitioners acquired an additional *225 20 acres, adjoining the original farm, for $2,500, and expended $300 for improvements thereto. In 1943 petitioners acquired a building and 10 acres of land in Cook County, Illinois, for $450, and made improvements thereto at a cost of $600. During the following year petitioners purchased a frame building at 5056 West 31st Place, Cicero, for $3,250, and in 1945 petitioners bought a brick store building located at 5125 Ogden Avenue, Cicero, Illinois, for $5,100. The latter property, however, was not held in the names of the petitioners, but was recorded in the name of Helen Mazurek, trustee, who is Lusk's sister-in-law. Petitioners purchased their home at 5218 West 30th Street, Cicero, Illinois, in 1937 for $5,250. The furnishings in their home, which were acquired prior to 1942, cost approximately $2,000. They expended $250 during the taxable years to furnish a room in the basement which they rented. They lived modestly, but their living expenses were at least $2,000 in excess of all amounts deductible from adjusted gross income in computing their net income in each of the years 1942 to 1946, inclusive. Petitioners purchased an automobile for $970 in 1941 which they *226 still owned on December 31, 1946. Other assets owned on December 31, 1946, were Series E bonds purchased by Lillian in 1942 and 1943 for $3,000 and sold by her in 1947 for $3,140; a truck purchased in 1944 for $700; business machinery acquired in 1944 for $200; and business inventory in the amount of $14,010. They also had approximately $10,000 in cash in their safety deposit box and had a tax prepayment on deposit with the United States Treasury in the amount of $1,902.55. Lusk borrowed $12,000 from the Cicero State Bank on April 5, 1946. He repaid $3,500 of the amount borrowed during 1946 which left a balance due of $8,500 on December 31, 1946. Petitioners have never received anything by inheritance or gift. Lusk had no real property and very few assets of any kind in 1933. Neither of the petitioners filed an income tax return prior to 1935. A return was filed for each of the years 1935 to 1941, inclusive, but in only three of those years was sufficient income reoprted to require the payment of a tax. In 1938 Lusk reported a net income of only $349.29. Income was reported which required the payment of a tax in the amounts of $49.96, $43.95, and $8.37 in the years 1935, 1936, and *227 1941, respectively. Petitioners' net worth did not exceed $53,630.17 on December 31, 1941, which allows $13,515.50 for cash on hand, business inventory, and other assets in addition to those already mentioned. The amounts of petitioners' allowed or allowable depreciation and one-half of their long-term capital gains during the years 1942 to 1946, inclusive, were as follows: Allowed or
One-half
Allowable
Long-term
Year
Depreciation
Capital Gains
1942
$ 584.60
1943
924.60
1944
1,394.60
$3,162.71
1945
1,624.60
1,181.73
1946
764.64
1,209.84
$5,293.04
$5,554.28 Petitioners' net worth increased by $107,694.11 between December 31, 1941 and December 31, 1946. Deducting one-half petitioners' long-term capital gains and their 1946 net income of $13,140.85 and adding $10,000 for their nondeductible living expenses during those five years, reveals a total net income for the years 1942 to 1945, inclusive, of $98,998.98. Petitioners' reported net income, their net income as determined by respondent, and their actual net income for each of the taxable years was as follows: Net Income as
Reported
Determined by
Actual
Year
Net Income
Respondent
Net Income
1942
$2,329.73
$ 9,905.39
$ 9,320.79
1943
2,915.81
6,298.61
5,374.01
1944
2,397.15
27,087.71
25,693.11
1945
4,058.45
59,399.66
57,775.06
1946
6,437.59
13,140.85
13,140.85
1947
1,717.15
6,676.33
6,676.33
*228 Petitioners omitted from their tax return for 1944 the following dividends received: $300, Glenn L. Martin Company; $675, Patino Mines and Enterprises, Consolidated; $100, Chicago Pneumatic Tool Company; and $5.00 from Davison Chemical Company. In addition, petitioners failed to report on their 1944 return a gain of $416.19 realized from the sale of 100 shares of American Crystal Sugar stock. In 1945 petitioners failed to report on their return gains realized on the following sales of stocks: 20 shares of Pure Oil Company for $328.99; 50 shares of Consolidated Steel for $1,023.22; 100 shares of Consolidated Steel for $2,147.01; and 100 shares of Chicago and Northwestern for $3,767.62. There was also a $50 adjustment in a sale price during 1945 which petitioners failed to report. Petitioners refused to cooperate with the revenue agents, and they resorted to various ruses in order to hamper the investigation. At least part of the deficiency in each of the years 1942 to 1945, inclusive, was due to fraud with intent to evade tax. Petitioners executed timely waivers extending the time for the assessment of their income tax for the taxable years 1946 and 1947 until June 30, 1952. The *229 deficiency notice was mailed on February 15, 1952. Opinion Petitioners contest respondent's determination of deficiencies for the years 1942 to 1947, inclusive. The deficiencies are prima facie correct, and petitioners have the burden of overcoming this presumption. In order to determine whether the petitioners had met this burden we carefully considered the entire record including the stricken testimony of the petitioner Lusk. It should be pointed out that the latter testimony was stricken because it is irrelevant and would have no bearing upon the conclusions reached even if admitted. For the years 1942 to 1945, inclusive, petitioners failed to produce records from which respondent's agents could compute their net income and these agents were forced to resort to their right under the circumstances "to seek information elsewhere to discover, assess, and collect the full tax liability imposed by law." Louis Halle, 7 T.C. 245, affd. (C.A. 2), 175 Fed. (2d) 500, certiorari denied 398 U.S. 949. Where, as here, there is an absence of records, the respondent is not confined to methods of accounting in computing the amount of petitioner's net *230 income, but may determine the amount of said income upon any reasonable basis. Eugene Vassallo, 23 T.C. 656 (January 19, 1955); H. A. Hurley, 22 T.C. 1256. Respondent determined the deficiencies for the years 1942 to 1945, inclusive, by computing petitioners' net income for each of the taxable years using as a primary guide the amount of petitioners' expenditures during the year following each of the taxable years and resolving reasonable doubts in favor of the petitioners. Most of petitioners' major expenditures were in cash and immediately followed a trip to their safety deposit box. Considering all the circumstances the assumption that the expenditures were indicative of the amount of income received in the preceding year appears reasonable and justified, particularly where as here the accuracy of respondent's computations is substantiated by use of the net worth method. Cf. United States v. Caserta, 199 Fed. (2d) 905. Petitioners offered no competent and credible evidence to refute the correctness of respondent's determination. The only error in respondent's computation which we have found and which is disclosed by the record is that no *231 allowance was made for allowed or allowable depreciation, and in our findings we have made proper adjustments for this. In addition to its presumptive correctness, the accuracy of respondent's determination, as we have previously indicated, is substantiated by computing petitioners' total net income for the four-year period using the net worth method. The sum of petitioners' net worth increase and nondeductible expenditures less one-half of their long-term capital gains reveals a total net income for the four-year period of between $98,000 and $99,000. The sum of the amounts of petitioners' net income for each of the four years as computed by respondent with adjustments for depreciation is $98,162.97. We have found that at least part of the deficiency in each of the years 1942 to 1945, inclusive, was due to fraud with intent to evade tax. We think our finding is supported by clear and convincing evidence. Petitioners' net income for the four-year period was more than eight times the amount reported. Cash expenditures alone were in excess of seven times the reported net income and Lusk could not help but have known that the income reported was substantially understated. Furthermore, *232 the use of currency instead of bank accounts, the failure to keep books, and the attempts to hinder the investigation of the tax returns are evidence of a deliberate attempt to conceal the existence of the large amounts of unreported income. These and other facts of record establish by clear and convincing evidence that at least part of the deficiency in each of the taxable years 1942 to 1945, inclusive, was due to fraud with intent to evade tax. Accordingly, the statute of limitations has not run on any of those years, and respondent properly determined that petitioners were liable for 50 per cent additions to tax under section 293(b) of the Internal Revenue Code of 1939. [1] Lillian is jointly liable for the additions to tax even if Lusk alone was guilty of fraud. Myrna S. Howell, 10 T.C. 859, affd. (C.A. 6), 175 Fed. (2d) 240. *233 Since petitioners signed waivers extending the time for assessing their income tax for the years 1946 and 1947 until June 30, 1952, and the notice of deficiency was mailed prior to that date, the statute of limitations has not run on either of those years. The asserted deficiencies for the years 1946 and 1947 were determined on the basis of incomplete and fragmentary records which petitioners furnished respondent's agents. Respondent also determined 5 per cent additions to tax for those two years under section 293(a), Internal Revenue Code of 1939. [2] Since there is no evidence in the record to rebut these determinations, they are sustained. Estate of J. W. Gibbs, Sr., 21 T.C. 443; John Laing, 22 B.T.A. 380. *234 Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable. * * *↩