CLIFTON AND VERA MAE FREEMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Freeman v. Commissioner
Docket No. 8350-77.
United States Tax Court
T.C. Memo 1980-380; 1980 Tax Ct. Memo LEXIS 206; 40 T.C.M. (CCH) 1219; T.C.M. (RIA) 80380; September 15, 1980, Filed *206 Held, amount of petitioners' income for 1973, 1974, and 1975 determined. Held further, petitioners are liable for the addition to tax under section 6651(a) for 1973 and 1974 and for the addition to tax under section 6653(a) for 1973, 1974, and 1975. Clifton Freeman and Priscilla Jacobs, for the petitioners. Frank C. McClanahan, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent has determined deficiencies in and additions to petitioners' income taxes as follows: Additions to Tax
Year
Deficiencies
Sec. 6651(a)(1) [1]
Sec. 6653(a)
1973
$ 25,375.05
$ 1,262.26
$ 1,288.35
1974
13,689.23
2,029.69
690.78
1975
2,793.33
279.33
180.26
*207 The following issues are presented for decision: (1) whether petitioners received or repaid loans in amounts in excess of those determined by respondent; (2) whether petitioners' personal living expenses during the years in issue were less than those determined by respondent; (3) whether petitioners are liable for the addition to tax for late filing under section 6651(a)(1); and (4) whether petitioners are liable for the addition to tax for negligence under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, and the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Clifton and Vera Mae Freeman, are husband and wife who, at all times pertinent to this case, resided in Bolton, North Carolina.Petitioners filed their joint individual income tax returns for the taxable years 1973, 1974, and 1975 on May 9, 1974, June 23, 1975, and June 14, 1976, respectively, with the Internal Revenue Service Center at Memphis, Tennessee. Clifton Freeman (hereafter *208 sometimes referred to as Clifton) was engaged in the logging business as a sole-proprietor during the years at issue. Petitioners also operated a restaurant during 1973 and 1974. Clifton has no formal education, is unable to read and write (except for his signature) and did not prepare petitioners' tax returns. Petitioners' daughter, Priscilla Jacobs (hereafter Priscilla), maintained what records she could for her parents. Petitioners took their records to Helen M. Sanderlin (hereafter Sanderlin), a return preparer, during the years in issue. Sanderlin then prepared and submitted petitioners' income tax returns. During the years in issue, six persons resided in petitioners' home. [2] Petitioners reside in a rural area and relied a good deal on hunting, fishing and a garden they maintain for their food. One of the petitioners has a brother who raises cattle and hogs and who, on occasion, either sold at a discount or gave meat to the petitioners. In 1973 and 1974, petitioners, Priscilla and the children ate many of their meals at the restaurant. The restaurant closed in 1975 and consequently the members of petitioners' household ate more of their meals at home than they had *209 in 1973 and 1974. Petitioners' grocery receipts total $767.95 for 1973 and $603.36 for 1974. Respondent, in reconstructing petitioners' income under the cash expenditures method, determined petitioners' groceries and outside meals to be $4,420 per year for each year in issue. [2]
In 1974, petitioners spent $854.13 for gasoline, oil and grease for their automobile. Clifton purchases oil through the proprietorship, which is then delivered directly to the house. Most of the oil changes are performed by petitioners' two sons. Petitioners' routine maintenance on the automobile is thus kept at a minimum. Respondent determined expenditures of $1,300, $1,800 and $1,800 for 1973, 1974 and 1975, respectively, for gasoline, oil and grease. Clifton's *210 logging proprietorship sold lumber to Acme Wood Co. (Acme) for which he would receive advances while the wood was still on the ground. Because Acme estimated the weight of its purchases often times errors would occur in amounts paid to or credited to the logger selling to Acme. Loggers who were underpaid or overpaid would then receive a credit or charge when the lumber was actually weighed by Acme. Petitioners' account with Acme for the years in issue was as follows: [4]
Charge Errors
Credit
Calendar
Beginning
and Open
Errors &
End
Year
Balance
Advances
Payments
Balance
1973
$ 125.83 cr.
$36,921.86
$36,065.43
$ 730.63
1974
730.60
24,406.20
27,725.03
2,588.23 cr.
1975
2,588.23 cr.
20,449.82
17,911.54
49.95 cr.
Because of *211 petitioners' lack of formal education and understanding of the tax laws, petitioners relied on Sanderlin to prepare and submit their income tax returns. Clifton would sign whatever Sanderlin prepared and he relied on her completely. Because of the condition of petitioners' records Sanderlin was supposed to have applied for an extension of time for petitioners to file their returns for 1973, 1974, and 1975. Sanderlin did not file for extensions except for 1975, because both Clifton and Vera were ill and hospitalized around April 1976. Petitioners' request for an extension to file their 1975 return was denied on April 29, 1976. Petitioners' request for an extension to file their state income tax return for 1975 was granted by the State of North Carolina. In late 1975, Revenue Agent James Pardue began an examination of petitioners' income tax returns. Pardue decided that petitioners' records were inadequate to correctly determine their income. Accordingly, Pardue reconstructed petitioners' income by use of the source and application of funds method. The statutory notice of deficiency issued May 4, 1977, reflects the results of respondent's reconstruction of petitioners' income: *212 SOURCE AND APPLICATION OF FUNDS [5]
Application of Funds
1973
1974
1975
Increase in checking accounts
$ 531.94
$ $
Increase in inventory
900.00
6,662.95
Increase in savings accounts
2,049.98
230.65
Loan repayment, net of interest
43,198.85
58,312.31
25,987.73
Capital expenditures
52,811.24
8,402.30
7,405.40
Personal Living expenses
18,519.09
26,824.72
26,638.22
Total application of funds
$118,011.10
$100,202.28
$60,262.00
Source of Funds
1973
1974
1975
Decrease in checking accounts
$ $ 256.04
$ 541.05
Decrease in savings accounts
1,893.99
Decrease in inventory
5,662.95
Adjusted gross income per return
5,263.16
1,329.00
10,289.92
Depreciation as corrected
12,796.84
14,325.42
13,119.45
Loans received
34,328.61
38,403.00
20,017.62
Total source of funds
$ (52,388.61)
$ (56,207.45)
$ (49,630.99)
Application in excess of source.
Understatement of adjusted
gross income
$ 65,622.49
$ 43,994.83
$ 10,631.01
*213 Petitioners reported the following amounts as adjusted gross income on their returns: 1973
$ 5,263.16
1974
1,329.00
1975
10,289.92
Respondent, in his determination of deficiency, included in petitioners' personal living expenses the following items: PERSONAL LIVING EXPENSES 1973
1974
1975
Groceries and outside meals
$4,420.00
$ 4,420.00
$4,420.00
Clothing
2,340.00
4,160.00
4,160.00
Laundry and dry cleaning
780.00
1,560.00
1,560.00
Gasoline, Oil, grease, etc.
1,300.00
1,800.00
1,800.00
for automobile
Other expenses
9,679.09
14,884.72
14,698.22
Total
$18,519.09
$26,824.72
$26,638.22
OPINION Amount of Unreported Income
Petitioners contend that respondent has made several errors in the reconstruction of petitioners' income for the years in issue. Petitioners focus mainly on several items included in respondent's "Schedule of Personal Living Expenses", (groceries, and outside meals, clothing, laundry and dry cleaning and gasoline, Oil, grease and washing for the automobiles) and also argue that some of the funds spent during those years came from nontaxable advances by the Acme Wood Co. Petitioners *214 also challenge respondent's assertion of the section 6651(a)(1) late filing penalty and the section 6653(a) negligence penalty. Respondent argues that petitioners have not shown that the late filings of their returns were due to reasonable cause and that petitioners were negligent in failing to keep adequate records by which their income could be determined. Respondent has used the source and application of funds method (sometimes called the cash expenditures method) to determine petitioners' taxable income for 1973, 1974 and 1975. This method assumes that the excess of a taxpayers cash expenditures over his or her reported income and non-taxable sources has arisen from taxable sources unless the taxpayer establishes to the contrary. [6]The source and application of funds method is properly employed when a taxpayers records do not exist or are inadequate to properly reflect income. Vassallo v. Commissioner,23 T.C. 656 (1955). Petitioners' records were clearly insufficient to accurately determine their income and petitioners do not contend otherwise. Petitioners instead *215 argue that respondent's determination was erroneous because it did not consider loans from Acme Wood Co. and because it overstated petitioners' living expenses. Petitioners contend that the statement from Acme did not totally reflect all transactions between Clifton and Acme during the years in issue. Petitioners could not, however, establish that any loans were made apart from those recorded on the Acme statement. Accordingly, we find that no loans were made to petitioners from Acme other than those stated on the year-end statement. [7]
*216 Petitioners argue that respondent's figures for groceries, clothing, laundry and automobile expenses are in error. Any reduction in the amounts spent for these items would directly reduce petitioners' taxable income. Respondent, in his notice of deficiency, determined that petitioners spent $4,420 per year on groceries and outside meals. Petitioners contend that they spent $767.95 and $603.36 for 1973 and 1974, respectively. Petitioners supplied no figure for 1975; however, respondent has conceded on brief that $4,420 per year is incorrect. Six persons resided in petitioners' home during the years in issue. During much of this time, petitioners operated a restaurant and they often dined there rather than at home. Petitioners live in a rural area and obtained a good deal of their food by hunting, fishing, and gardening and were often provided with beef or pork by one of their brothers. Petitioners thus did not often have to purchase some of the most expensive grocery items. While petitioners' presentation was quite credible, we simply cannot believe that petitioners only expended $767.95 and $603.36 per year to feed six persons. We find that petitioners spent $2,500 per *217 year on groceries and outside meals. Cohan v. Commissioner,39 F.2d 540 (2nd Cir. 1930). Respondent also determined that petitioners spent $2,340, $4,160 and $4,160 on clothing for 1973, 1974 and 1975, respectively. Priscilla testified that petitioners spent $853.18 in 1978 for clothing for three persons. Respondent admits that the figures in the statutory notice are high and states the $1,500 would be reasonable. Adjusting petitioners' $853 figure for inflation and the different number of people involved, we find that petitioners spent $1,200 per year for clothing. Respondent determined that petitioners spent $780, $1,560 and $1,560 for laundry and dry cleaning during 1973, 1974, and 1975, respectively. Priscilla testified that petitioners spent $45.20 in 1978 for laundry and dry cleaning. We find that petitioners spent $60 per year during the years in issue. Lastly, petitioners contend that for 1974 they spent $854.13 on gasoline, oil and grease for their automobile. Respondent's deficiency notice provided $1,300, $1,800 and $1,800 for 1973, 1974 and 1975, respectively. Most of the routine maintenance on petitioners' automobile was done by their two *218 sons. Oil was obtained through Clifton's logging proprietorship. We find that petitioners spent $750 on gasoline, oil and grease for their automobile in 1973, $854.13 in 1974, and $1,000 in 1975. Due to concessions made by petitioners and respondent and our findings herein, petitioners' living expenses for the years in issue are: 1973
1974
1975
Groceries and outside meals
$ 2,500.00
$ 2,500.00
$ 2,500.00
Clothing
1,200.00
1,200.00
1,200.00
Laundry and dry cleaning
60.00
60.00
60.00
Gasoline, oil, grease, for auto
750.00
854.13
1,000.00
other expenses
7,073.43
9,540.18
9,718.91
Total
$11,583.43
$14,154.31
$14,478.91
Petitioners' understatement of income for the years 1973, 1974 and 1975, as determined by use of the source and application of funds method, is thus: Application of Funds
Increase in checking accounts
$ 531.94
$ $
Increase in inventory
900.00
Increase in savings accounts
2,049.98
230.65
Loan repayment, net of interest
43,198.85
58,312.31
25,987.73
Capital Expenditures
42,389.67
8,402.30
7,405.40
Personal living expenses
11,583.43
14,154.31
14,478.91
Total application of funds
$100,653.87
$ 80,868.92
$ 48,102.69
Source of Funds
Decrease in checking accounts
256.05
541.05
Decrease in savings accounts
1,893.99
Adjusted gross income per
return
5,263.16
1,329.00
10,289.92
Depreciation as corrected
12,796.84
14,325.42
13,119.45
Loans
34,328.61
38,403.00
20,017.62
Total source of funds
$ (52,388.61)
$ (56,207.45)
$ (43,968.04)
Total understatement of
income
$ 48,265.26
$ 24,661.47
$ 4,134.65
*219 Section 6651 (a)(1) late filing penalty
Respondent has determined that petitioners are liable for the addition to tax for late filing of returns under section 6651 (a)(1)[8] for each of the years in issue. Petitioners' joint returns for 1973, 1974 and 1975 were filed on May 9, 1974, June 23, 1975 and June 14, 1976, respectively. Clifton is uneducated and depended upon *220 Priscilla to maintain petitioners' records. Priscilla would then turn over petitioners' records to Sanderlin, who prepared petitioners' returns. Around April 1976 both of the petitioners were ill and required hospitalization for some time. Sanderlin was supposed to apply for extensions of time to file petitioners' returns. In fact, Sanderlin only applied for an extension for 1975. Petitioners' application stated that more time was needed to obtain information for their return. This application was denied by respondent on April 29, 1976. Petitioners' application for an extension to file their 1975 State tax return was granted by the State of North Carolina. Petitioners must establish not only the absence of willful neglect, but also the existence of reasonable cause for the late filing of their returns. Reliance on a return preparer, by itself, does not establish reasonable cause for the late filing of a return. Elliott v. Commissioner,40 T.C. 304 (1963). Petitioners are *221 ultimately responsible for the timely filing of their returns and cannot shift their responsibility by employing others to do so. While petitioners' lack of formal education necessitated their reliance on Sanderlin, petitioners still have the duty of ensuring that their returns were timely filed. Petitioners did not call Sanderlin as a witness and we do not know why she failed to timely file petitioners' returns, nor can we speculate on her failure to do so. However, both petitioners were ill and required hospitalization around April 1976. Clifton spent approximately 15 days in the hospital and Vera spent approximately 10 days in the hospital. While petitioners' request for an extension did not state illness as a reason for the request, petitioners' illness was the factor that created their need for more time to gather information to adequately make a return (the stated reason on the application). We hold that petitioners have established reasonable cause for the late filing of their 1975 return, but not for the late filing of their 1973 and 1974 returns. Section 6653 (a) negligence penalties
Respondent has also determined that petitioners are liable for the addition *222 to tax for negligence or intentional disregard of rules and regulations pursuant to section 6653(a)[9] for each year in controversy. Respondent bases the asserted negligence additions solely upon petitioners' failure to maintain adequate records. Petitioners' contend that their reliance upon Priscilla and Sanderlin and, for 1975, their illnesses, preclude assessment of the negligence additions. Petitioners admit that what records they kept were inadequate to accurately determine their income. In fact, our determination of petitioners' income has established a substantial omission of income *223 by petitioners during 1973 and 1974. Petitioners' illnesses during 1976 in no way could have affected the manner in which petitioners' 1975 records were maintained. Therefore, we hold petitioners liable for the addition to tax under section 6653(a) for 1973, 1974 and 1975. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable years in issue.↩
2. Although the record is unclear as to the identities of these residents, apparently they were petitioners, Priscilla and Priscilla's children. ↩
2. Although petitioners had no total for groceries and outside meals for 1975, respondent has conceded, in his memorandum brief, that $4,420/year is probably too high. Respondent suggests that the true figure lies somewhere between $4,420/year and those figures provided by petitioners.↩
4. Credits to petitioners' account are represented as "cr." "Charge errors and open advances" states the amount of loans Acme made to petitioners and errors made by Acme to petitioners' benefit. "Credit errors & payments" represents payments made by petitioners to Acme and errors made by Acme to petitioners' detriment. "End balance" reflects the balance in petitioners' account at the end of each year.↩
5. The parties have agreed that the following items should be deleted from respondent's calculations: increase in inventory (1974 only), and decrease in inventory (1975). Capital expenditures for 1973 have been agreed to be $42,389.67. All other items, except personal living expenses and loans repaid and received have been agreed to by the parties.↩
6. For example, petitioners could show existence of a "cash hoard", loan, inheritance, gift, or any other nontaxable source for the funds expended.↩
7. Respondent contends on brief that the credits to petitioners' account with Acme at the end of 1974 and 1975 establish larger cash expenditures (and thus more income) by petitioners for those years than originally determined. However, because the statement does not separate actual payments from adjustments made for errors in weighing the timber purchased by Acme, we cannot agree with respondent on this point. Further, respondent cannot assert a greater deficiency for the first time on his brief. See Nash v. Commissioner,31 T.C. 569↩ (1958).
8. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter 61 (other than part III thereof), * * * on the date prescribed therefore (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *↩
9. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or International Disregard of Rules and Regulations with Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩