NATHAN PARRIS AND HELEN PARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parris v. Commissioner
Docket No. 201-78.
United States Tax Court
T.C. Memo 1980-383; 1980 Tax Ct. Memo LEXIS 193; 40 T.C.M. (CCH) 1230; T.C.M. (RIA) 80383; September 16, 1980, Filed *193 Respondent determined petitioners' 1975 income from a grocery store/service station under the source and application of funds method. Held, petitioners did not establish the existence of cash on hand in excess of the amount determined by respondent. Petitioners are liable for the addition to tax under section 6653(a). Lawrence A. Hogan and Theron E. Mullinax, Jr., for the petitioners. Mathew E. Bates, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent has determined a deficiency in petitioners' 1975 income tax of $2,521.27 and an addition to the tax pursuant to section 6653(a) [1] of $126.06. The issues for our decision are: (1) whether respondent has accurately determined petitioners' income by use of the source and application of funds method; [2] and *194 (2) whether petitioners' underpayment, if any, was due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, and exhibits attached thereto, are incorporated herein by this reference. Petitioners, Nathan and Helen Parris, husband and wife, resided in East Flat Rock, North Carolina at all times pertinent to this case. Petitioners' joint Federal income tax return for 1975 was timely filed with the Internal Revenue Service Center at Memphis, Tennessee. During 1975 petitioner, Nathan Parris (hereafter petitioner) operated a combination grocery store and service station. Petitioner resided in a mobile home located about 40 feet from the grocery store/service station. Petitioner's business was located near a General Electric factory. Because petitioner cashed General Electric payroll checks for some of the factory workers, a good deal of cash was kept on hand. Petitioner also retained cash in order to purchase gasoline for the pumps and to make most of the purchases for the grocery store. Petitioner left school after the second grade and is able to read *195 and write very little. Petitioner's books were kept by Joseph F. Beddingfield (hereafter Beddingfield). Petitioner made daily entries of sales, purchases and expenses. The daily sales figure was obtained from petitioner's cash register, which was a fairly old-fashioned model that did not provide petitioner with a running tape of each day's activities. Petitioner supplied Beddingfield with the daily totals each month and Beddingfield would then compute the monthly totals for petitioner's business. Petitioner did not give Beddingfield the receipts or bills for the business unless Beddingfield requested them in order to clear up some discrepancy. Beddingfield also prepared petitioner's 1975 joint income tax return. On their joint income tax return for 1975, petitioners reported the receipt of $379,047 from the grocery store/service station. This figure included $1,200 which petitioner added to gross receipts for items consumed for personal use. Petitioner maintained a checking account during 1975. The balance of the account on January 1, 1975, was $269, and on December 31, 1975 was $4,006. Petitioner-wife underwent an operation in 1975 and spent 42 days in the hospital. *196 Because petitioner carried no medical insurance at the time he had to pay approximately $3,700 for physician and hospital bills. Petitioner paid these bills by check. Respondent determined that petitioner's 1975 return did not adequately state petitioner's income for that year. Gail Kellis (hereafter Kellis) was therefore assigned to audit petitioner's 1975 return. Kellis first met with petitioner and Beddingfield on March 22, 1977. At that meeting, Kellis first questioned petitioner concerning personal living expenses. Petitioner stated that he and his wife lived quite simply and provided Kellis with the following estimates for some of their 1975 personal living expenses: Item
Amount
Groceries and outside meals
$ 520.00
Clothing
600.00
Barber, Beauty shop and cosmetics
50.00
Gifts and allownaces
200.00
Utilities
556.00
Auto license tags
15.00
Auto insurance
88.00
$2,029.00
Petitioners paid other living expenses of $7,900 by check during 1975 for a total of $9,929. In determining petitioner's income for 1975, respondent used this figure as petitioner's personal living expenses. Kellis then questioned petitioner concerning his cash *197 on hand for 1975. Killis explained to petitioner that "cash on hand" referred to any money that petitioner had available, apart from cash kept in bank accounts. Petitioner told Kellis that he usually kept three to four thousand dollars at the store to pay operating expenses. Petitioner and Kellis agreed that $3,500 was a reasonable figure for cash on hand for both the beginning of 1975 and the end of 1975. On April 6, 1977, Kellis and petitioner met again. After reviewing petitioner's 1974 records and again explaining "cash on hand" to petitioner, Kellis determined that petitioner probably had $7,000 available cash at the beginning of 1975. Kellis later told petitioner that a reconstruction of his 1975 income by the source and application of funds method revealed an understatement of income or overstatement of deductions of $10,626. On April 28, 1977, Kellis received a phone call from petitioner. Petitioner stated that at the beginning of 1975 he had $10,000 in a safe deposit box.Petitioner stated that he had been afraid to tell Kellis about this $10,000. Petitioner had employed a Mr. Engel, a certified public accountant, to represent petitioner before the Internal Revenue *198 Service. On May 31, 1977, Kellis met with petitioner and Mr. Engel. Petitioner told Kellis that he had gone to the safe deposit box three or four times in 1975 and taken the entire $10,000. Petitioner stated that he had saved the $10,000 from years prior to 1975. On June 2, 1977, Kellis requested Engel to furnish a statement from petitioner's bank showing dates of entry to petitioner's safe deposit box. On June 8, 1977 Kellis received a statement from petitioner's bank showing that petitioner did keep a safe deposit box in 1975. However, a copy of petitioner's signature card showed no entries to the box during 1975. Kellis also received, on the same date, a letter signed by petitioner which stated: I made an error in assuming the money I had on hand was in the Safe Deposit Box. My wife looks after the cash on hand and she had it in a safe we have in the house. Petitioner again stated that this sum was saved from prior years. At trial, petitioner could not recall who wrote this letter but he did recognize his signature. Kellis determined petitioner's 1975 income using the source and application of funds method. Cash on hand was determined to be $7,000 as of January 1, 1975 and *199 $3,500 as of December 31, 1975. The understatement of income or overstatement of deductions thus remained at $10,626 and accordingly, on October 5, 1977, respondent mailed a notice of deficiency to petitioners, which determined petitioner's net profit from his business as $16,305.92. Petitioner reported a net profit of $5,679.92 on the 1975 joint return. OPINION Respondent determined petitioner's 1975 income by use of the source and application of funds method. Respondent also determined that petitioners are liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Petitioner contends that respondent's determination of living expenses is merely an estimate, that petitioner had more cash on hand at the beginning of 1975 than respondent determined and that petitioner's records are accurate. Where books and records are inadequate to clearly reflect income, the respondent may use the source and application of funds method (sometimes called the cash expenditures method) to determine taxable income, Vassallo v. Commissioner,23 T.C. 656 (1955). Under the source and application of funds method, respondent *200 determines the amount by which one's expenditures exceed one's receipts from known sources. This excess is considered to be unreported taxable income unless the taxpayer can establish a nontaxable source or sources for such excess. One nontaxable source is a "cash hoard" compiled prior to the year in question. Petitioner contends that respondent's figures for petitioner's living expenses are merely estimates and thus inaccurate. However, these estimates were given to respondent by petitioner at the March 22, 1977 meeting and do not appear to be inflated or incredible. Petitioner has the burden of proof to establish the true amount of the 1975 living expenses, Rule 142, Tax Court Rules of Practice and Procedure, Welch v. Helvering,290 U.S. 111 (1933). Petitioner introduced no evidence concerning these living expenses and accordingly has not met his burden. Petitioner's main contention is that respondent's determination did not fully reflect a cash hoard of $10,000 accumulated prior to 1975. Petitioner bases his contention on the fact that he needed a good deal of cash to operate his business and to cash payroll checks from General Electric employees. Petitioner *201 also argues that Kellis did not fully explain what she meant by "cash on hand". Respondent used $7,000 as beginning cash on hand and $3,500 for ending cash on hand for 1975. Thus, respondent calculated that petitioner spent $3,500 from nontaxable sources during 1975. We must uphold respondent for the following reasons: Kellis twice explained to petitioner what was meant by cash on hand. Despite petitioner's limited education, we believe that petitioner fully understood at the time what cash on hand consisted of. Petitioner initially told Kellis that he kept $3,000 to $4,000 on hand to operate the business. After retaining a certified public accountant and being informed of a $10,626 understatement of income, petitioner stated that he had accumulated $10,000 in a safe deposit box prior to 1975 and had emptied the box during 1975. When bank records revealed that petitioner's safe deposit box had not been entered at all in 1975, petitioner told Kellis that his wife took care of the cash and had kept the $10,000 in their mobile home. Petitioner thus altered his explanation of his cash on hand twice; once after retaining representation before the Internal Revenue Service and again *202 after bank records revealed an inconsistency in petitioner's earlier explanation. Furthermore, petitioner reported gross income of $5,679.92 for 1975. Petitioner lived modestly and, apart from major medical expenses in 1975, had few large expenditures. Despite petitioner's modest income and expenses, petitioner contends that he did not know the location of a sum of cash as large as $10,000. This contention is simply not credible. Petitioner has not establish cash on hand in excess of $7,000. Respondent has determined that part of petitioner's 1975 underpayment was due to negligence or intentional disregard of rules and regulations under section 6653(a). [3] Petitioner's reported income was determined by Beddingfield, who used daily entries compiled by petitioner. As shown by respondent's determination of petitioner's true income for 1975, a substantial amount of income was omitted from petitioner's 1975 return. Petitioner contends that his records were accurate and not negligent. Our findings above indicate otherwise. Accordingly, petitioner has not shown that respondent's determination of negligence was in error. Courtney v. Commissioner,28 T.C. 658 (1957). *203 Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. Our decision on this issue will necessarily determine petitioners' 1975 deductions for medical and dental expenses and petitioners' 1975 self-employment tax. Additionally, respondent has conceded that petitioners are entitled to an investment tax credit of $154.32 for 1975.↩
3. SEC 6653. FAILURE TO PAY TAX. (a) Neligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.-- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩