THOMAS FRED WARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ward v. Commissioner
Docket No. 19536-83.
United States Tax Court
T.C. Memo 1986-237; 1986 Tax Ct. Memo LEXIS 370; 51 T.C.M. (CCH) 1163; T.C.M. (RIA) 86237; June 10, 1986. W. Rodney DeVilliers, for the petitioner. David G. Hendricks, for the respondent. WILLIAMS
WILLIAMS, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax and additions to tax pursuant to section *371 6653(b) [1] for the taxable years 1977, 1978 and 1979 as follows: Year
Deficiency
Additions to Tax
1977
$32,127.97
$16,063.99
1978
74,894.08
37,447.04
1979
85,283.59
42,641.80
The Court must decide the following two issues: (1) whether petitioner failed to report income for the taxable years 1977, 1978 and 1979; and (2) whether any part of any underpayment of tax for the taxable years 1977, 1978 and 1979 is due to fraud with intent to evade Federal income tax within the meaning of section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Thomas F. Ward, resided in Lawton, Oklahoma at the time his petition was filed. Petitioner filed Federal income tax returns for each of the years 1977, 1978 and 1979 using the cash method of accounting. On his return for 1977 petitioner reported gross income of $7,200, representing "money made from poker games at my house." For 1978 petitioner reported gross income of $12,500, $5,700 of which was from "operating *372 a poker game" and $6,800 of which was from "playing cards and shooting dice." For 1979 petitioner reported gross income of $13,649, $1,349 of which represented earnings from transactions in the gold market. Petitioner took no deductions for interest, taxes or other expenses for any of the years at issue in this case. His principal occupation for the past 32 years has been gambling, primarily bookmaking. Petitioner married Netta Ward (Netta) in 1937, and he divorced her in 1956. Pursuant to the divorce petitioner and Netta agreed upon a property settlement under which Netta received, among other things, the real property acquired by petitioner and Netta during their marriage, including the property known as 1 Morford Drive, Lawton, Oklahoma. In 1962 petitioner remarried Netta, and he divorced her again in 1967. The second divorce decree states that no property was jointly owned at the time of the second divorce. Petitioner has had exclusive control over Netta's financial affairs since their second divorce, though Netta was competent to handle her own affairs until 1979 or 1980. Petitioner made deposits to a bank account in Netta's name at various times during each of the years *373 1977, 1978 and 1979 of the following amounts: Year
Amount
1977
$4,900.00
1978
7,950.00
1979
10,200.00
Petitioner maintained no records of the expenses incurred for taxes, upkeep and other costs associated with the maintenance of properties held in Netta's name. [2] He did not file tax returns for Netta. Petitioner was not accountable to any other individual for his purported management of Netta's financial affairs and did not act in the manner of a fiduciary. The property at 1 Morford Drive, owned by Netta pursuant to the divorce decree of 1957, was sold in 1979 for $70,000. Netta endorsed the proceeds of this sale to petitioner, who used the funds to purchase a series of cashier's checks. These checks were applied by petitioner for his own benefit in the following manner: Cashier's Check #
Amount
Disposition
88157
$ 9,000.00
Cashed
88158
8,000.00
Cashed
88159
6,000.00
Investment in
Soundstage [3]
88160
9,000.00
Soundstage
88161
8,000.00
Soundstage
88162
8,000.00
Soundstage
88164
4,000.00
Soundstage
Endorsed to Hilton
88163
5,000.00
Casino, Las Vegas
88165
8,295.43
Cashed
Paid to IRS
88166
1,869.11
for petitioner
Paid to IRS
88167
2,835.46
for petitioner
Total:
$70,000.00
*374 Prior to 1974 respondent had assessed $331,873.70 in wagering excise taxes for petitioner's taxable years 1971 and 1972. In May of 1974 respondent regarded these taxes as uncollectible. Petitioner was subsequently convicted in June of 1983 of concealing money, property and interests with intent to evade and defeat the collection of the wagering excise taxes respondent had assessed against him. The conviction was upheld by the Court of Appeals for the Tenth Circuit. Petitioner as buyer and the American Company as seller executed in 1975 a contract for the sale of 105 acres of land identified as lying north of Highway 62 near Cache, Oklahoma (the "105-acre tract") for $52,000. The terms of purchase of the 105-acre tract called for a down payment of $12,000 and equal annual payments of $10,000 per year for four years. Petitioner did not receive a deed for the 105-acre tract from the American Company. Petitioner and the American Company agreed not to record their contract for the sale of the 105-acre tract to evade Federal tax liens that attached to petitioner's property. In 1975 *375 petitioner also purchased from the American Company a 355-acre ranch identified as lying south of Highway 62 near Cache, Oklahoma (the "Cache ranch") for $175,000. Petitioner claims that the Cache ranch belonged to Netta. Netta resided at the Cache ranch following the sale of 1 Morford Drive. The terms of purchase for the Cache ranch called for a down payment of $35,000 and equal annual payments of $35,000 per year for four years. In February of 1977 petitioner deposited $45,000 to an account at the American National Bank, the parent of the American Company. This payment was an installment payment on petitioner's purchase of the two tracts. Petitioner platted the 105-acre tract into 10-acre parcels, one of which was purchased by James Brown in 1979 for $13,500. The real estate agent involved in the transaction, Opher Cephas, received a deed to the 10-acre parcel from the American Company to petitioner, whereupon he prepared a deed to the parcel from petitioner to Brown. Both deeds were recorded by Cephas. The check for the purchase price of the 10-acre parcel was made payable to petitioner and the American Company and was endorsed by both parties. However, since record *376 title to the parcel passed from the American Company to petitioner and thence from petitioner to Brown, Federal wagering excise tax liens against petitioner attached to the 10-acre parcel. These liens were later released as a result of the expiration of the applicable statute of limitations. Petitioner also received funds in installments from Carrol Biggs during 1978 for the purchase of a 10-acre parcel on the 105-acre tract. Petitioner admitted that the funds received from this sale were his. A check for $12,842.79 dated February 8, 1979 to petitioner and to the American Company, and endorsed by both parties, was for another 10-acre parcel on this same 105-acre tract. We find these funds to have been petitioner's. Petitioner owned a one-half interest in a 480-acre farm near Snyder, Oklahoma, from which he received income from the sale of cotton, wheat and cattle. In 1978 petitioner received net income of $4,533.00 from the sale of cotton. In 1979 petitioner received $2,562.50 in net income from the sale of cattle and $6,598.25 in net income from the sale of wheat. Petitioner also received net income from the sale of cattle which were kept on the Cache ranch in the amounts of *377 $1,327.47 in September of 1978 and of $15,522.85 in September of 1979. [4]
Petitioner purchased several properties during the years at issue in this case through an arrangement with Peggy McDaniels. Petitioner provided McDaniels with the capital necessary to purchase a given property; McDaniels would resell the property, and the two would evenly divide the profits generated thereby. In this manner, petitioner provided McDaniels with $1,500 in cash in April of 1977 with which she purchased property in Elgin, Oklahoma. The deed to the property was not recorded for the purpose of evading federal tax liens. Petitioner also provided McDaniels with $9,000 in cash for the purchase of property identified as 2409 H Street in Lawton, Oklahoma, and with $4,000 in cash for the purchase of property identified as 2104 Bessie Street in Lawton, Oklahoma. Both of these transactions occurred in 1979. During the years *378 1977, 1978 and 1979 Ray Caldwell was employed by petitioner to manage the rental properties which petitioner alleges were owned by Netta. Petitioner received rental payments from various properties, which included mobile homes, duplexes and houses. Caldwell remitted to petitioner all rental payments he collected, after deducting his wages and the expenses he incurred in maintaining the properties. Caldwell and Caldwell's parents each rented property from petitioner and their payments were included in Caldwell's remittances to petitioner. Petitioner received between $600 and $1,000 per month in rental income collected by Caldwell. [5]
Petitioner owned a property known as the Little Giant store, which he sold to Peggy McDaniels in 1978 for approximately $35,000. McDaniels paid petitioner in installments *379 of $500 per month until the store was destroyed by fire. [6]
Petitioner also owned a property known as the Big Giant store, which he sold to Odell Breeze in 1976 for $25,000. Breeze paid petitioner in installments of $505.95 per month during each of the years 1977, 1978 and 1979. Petitioner did not elect pursuant to section 453 to report his income from the sales of the Big Giant and Little Giant stores on the installment basis. Petitioner's basis in these properties cannot be determined from the evidence presented. Petitioner submitted a financial statement to the Sheridan Bank and Trust Company of Tulsa, Oklahoma in 1976 indicating a personal net worth of $632,500. A similar statement in the names of petitioner and Netta submitted in 1979 indicates a net worth of $1,235,500. Petitioner's business is listed on the statements as "rancher and investments." In February of 1979 petitioner obtained a $175,000 loan from the Sheridan Bank and Trust Company. The note was secured by a mortgage on the Cache ranch. Both petitioner and Netta signed the note, the proceeds *380 of which were applied in the following manner: Amount
Disposition
Payment on loan in the
$ 4,147.50
name of Tom F. Ward
Payment on loan in the
20,852.50
name of Tom Ward
Payment on loan in the
25,039.50
name of Tom F. Ward
Used to purchase participation
50,000.00
certificate in third party's loan
Purchase cashier's check #84856
25,000.00
payable to Bob Ensley as a loan
Purchase cashier's check #84857
960.50
payable to Tom Ward, cashed 4-20-79
Purchase cashier's check #84858
9,000.00
payable to Tom Ward, cashed 4-11-79
Purchase cashier's check #84859
40,000.00
payable to Tom Ward, cashed 5-8-79
Total
$175,000.00
For the taxable years 1977, 1978 and 1979, respondent contends that the sources of funds received by petitioner and the applications of funds made by petitioner were as follows: 1977
1978
1979
Sources - Total
$68,578.55
$75,738.66
$508,828.59
- Nontaxable
60,423.11
35,144.00
386,280.93
Applications - Total
183,689.13
147,949.18
505,631.37
- Deductible
10,917.88
7,940.72
10,238.02
Using the sources and expenditures method of calculation *381 of income, respondent contends that petitioner's gross income and deductions are as follows: 1977
1978
1979
Application of Funds
$183,689.13
$147,949.18
$505,631.37
Less Nontaxable Sources
60,423.11
35,144.00
386,280.93
Less Basis in Realty
Sales per Notice
of Deficiency
51,600.00
Less § 1202 Deduction
per Notice of
Deficiency
31,645.63
Adjusted Gross Income
123,266.02
112,805.18
36,105.44
Less Taxes Expense
1,863.81
2,378.08
4,436.36
Less Interest Expense
9,054.07
5,562.64
5,801.66
Less Dividend Exclusion
81.36
Net Income as Adjusted
112,348.14
104,864.46
25,867.42
Net Income Reported
7,200.00
12,500.00
13,649.00
Omitted Income
105,148.14
92,364.46
12,218.42
OPINION Petitioner argues that certain amounts attributed to him by respondent as gross income are in fact nontaxable loans obtained to finance various activities or are amounts properly attributable to Netta. He also argues that because his principal occupation is gambling, expenditures made to various hotels and casinos in Las Vegas are expenses deductible against petitioner's gambling income. [7]
*382 Respondent contends that petitioner received unreported income from investments in real estate, sales of farm goods, and other activities. Further, respondent contends that petitioner attempted to hide income from the Internal Revenue Service by listing various assets under his dominion and control in others' names, by concealing his ownership of certain real estate, and by conducting business transactions in a manner designed to avoid having the funds involved traced to him and to evade their seizure by respondent. As a result, respondent argues, petitioner's understatement of gross income was due to fraud within the meaning of section 6653(b). For the reasons discussed below, we agree with respondent. The sources and expenditures method of calculating income is a valid method of determining income where a taxpayer has no books and records. Holland v. United States,348 U.S. 121 (1954); Vassallo v. Commissioner,23 T.C. 656 (1955). Petitioner has no books and records, and, we believe, failed to keep any. Petitioner bears the burden of proving that the determination of income calculated by respondent under the sources and expenditures method *383 is incorrect. Vassallo v. Commissioner,supra at 662. Petitioner received income from the sale of wheat, cotton and cattle from the farm near Snyder, Oklahoma; from the rental of mobile homes, duplexes and houses held in his name or in Netta's; from the sale of various properties, including the Little Giant store and several parcels of the 105-acre tract; and, from the sale of cattle held in his name and in Netta's. None of this income, nor any related deductions or exclusions, was reported by petitioner. Instead, petitioner reported as income minimal amounts from "money made from poker games at my house," or from "operating a poker game, playing cards and shooting dice." Further, petitioner acquired in Netta's name properties over which he exercised complete dominion and control. These included the Cache ranch, as well as various mobile homes, duplexes and houses on which petitioner received rental income. Petitioner was accountable to no other person for the management of these assets, the proceeds and income from which were applied solely for his own benefit. Proceeds from the $175,000 loan, for which the Cache ranch--held in Netta's name--was pledged *384 as security, were similarly applied to pay obligations and to purchase assets solely for the benefit of petitioner. For the foregoing reasons, we find that the income from properties nominally held in Netta's name in truth belonged to petitioner and is taxable to him. Estate of Upshaw v. Commissioner,416 F.2d 737 (7th Cir. 1969), cert. denied 397 U.S. 962 (1970); Furnish v. Commissioner,262 F.2d 727 (9th Cir. 1958). Petitioner argues that respondent incorrectly determined petitioner's taxable income for the years at issue as a result of two errors. First, petitioner contends that his primary sources of funds were loans from various parties. Second, petitioner contends that he should be allowed to deduct hotel and casino expenses on the grounds his principal profession is gambling. The record provides no evidence to support petitioner's arguments. As to petitioner's first argument, respondent has properly accounted for all verifiable loans in the calculation of petitioner's nontaxable sources of funds for the years at issue in this case. Beyond bare testimonial assertions by petitioner that certain other amounts received were *385 loans, the record is barren of evidence to support his claim. We give no weight to petitioner's conclusory testimony otherwise unsupported by the record which, we believe, is unsupportable in fact. Petitioner's second argument is also without sound footing in fact. Petitioner may deduct bona fide gambling losses evidenced by closed and completed transactions only to the extent of winnings from such activities. Section 165(d); sections 1.165-1(b) and 1.165-10, Income Tax Regs. Petitioner has presented no evidence that payments made to various hotels and casinos were wegering losses, nor has he provided evidence of the extent of his wagering gains. [8]
Nevertheless, two items of income attributed by respondent to petitioner we find to be nontaxable in the years before us--the proceeds from the sale of 1 Morford Drive and those from the sale of the Big Giant store. The property at 1 Morford Drive belonged to Netta from the time of the first divorce from petitioner in 1957, and there is no evidence in the record to show that the property was acquired by petitioner at any subsequent time. Therefore, the property *386 belonged to Netta at the time of its sale. Netta endorsed the proceeds from the sale of the property to petitioner who used them exclusively for his personal purposes, but standing alone those facts do not support a finding that the sale proceeds are income to petitioner. There is nothing in the record to suggest that petitioner obtained the funds under false pretenses, in exchange for services or in any other manner that would render the funds taxable to him. The installment payments received by petitioner for the sale of the Big Giant store in 1976 are not taxable to petitioner in the years received, since petitioner made no election to report such income on the installment method pursuant to the then existing requirements of section 453. Sec. 1.453-8(b)(1), Income Tax Regs. Such income is taxable in the year of sale. Therefore, we must conclude that the proceeds from the sale of the Big Giant store are nontaxable sources of income in 1977, 1978 and 1979. Based on the foregoing, we conclude that petitioner has established that he did not underreport his income for the taxable year 1979. With respect to 1977 and 1978, except for the items noted above, we find petitioner's *387 gross income and deductions to be as respondent has contended on brief. United States v. Johnson,319 U.S. 503 (1943); Vassallo v. Commissioner,supra.
The final issue we must consider is whether petitioner's understatement of income for the taxable years 1977 and 1978 [9] was due to fraud with intent to evade tax within the meaning of section 6653(b). Respondent must establish, by clear and convincing evidence, that there is an underpayment of tax and that some part of this underpayment is due to fraud. Rule 142(b), Tax Court Rules of Practice and Procedure; section 7454(a). Although fraud may not be inferred from a mere understatement of income, consistent underreporting that is substantial either in amount or in proportion to the amount of income reported is persuasive evidence of fraudulent intent. Otsuki v. Commissioner,53 T.C. 96 (1969); see also Stone. v. Commissioner,56 T.C. 213 (1971). Evidence of concealment or deception will also support a finding of fraud within the meaning of section 6653(b). Zell v. Commissioner,763 F.2d 1139, 1144 (10th Cir. 1985). *388 The evidence in the record establishes clearly and convincingly that petitioner received substantial amounts of income from numerous sources which he failed to report on his Federal income tax returns for the taxable years 1977 and 1978. The record similarly establishes that petitioner conducted his business transactions in a manner designed to conceal both his assets and his tax liability for 1977 and 1978. Respondent has established the existence of an underpayment of tax for those years, and the evidence also clearly and convincingly establishes that some part of this underpayment was due to fraud. Therefore, we hold that section 6653(b) properly applies to the deficiencies for those taxable years. To reflect the foregoing and concessions by the parties, Decision will be entered pursuant to Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
2. Petitioner alleges that the records he did keep with respect to the properties held in Netta's name were stolen in 1983. Other than h is conclusory testimony, petitioner presented no evidence of the theft and could not describe either the books he supposedly kept or his method of tracking costs, expenses or income.↩
3. Soundstage was a club in Lawton, Oklahoma in which petitioner owned a one-half interest.↩
4. Petitioner asserts that the cattle belonged to Netta. Clyde Ward, petitioner's brother, stated that he sold "Tom [petitioner] and Mrs. Ward's cattle," and that he endorsed the proceeds from the sales over to petitioner. We find that the cattle belonged to petitioner.↩
5. Petitioner also received three checks during the year 1978 from Cruz Ramirez in the amount of $100.00, $89.92 and $100.00, respectively. On the checks are statements that they are payments for rent. Petitioner claims they were to pay gambling debts. Whether for rent or for payment of money lost to petitioner in gambling, the amounts are income to petitioner in 1978.↩
6. The record shows the last payment to be a check from McDaniels to petitioner for $500 dated May 28, 1979.↩
7. These arguments were raised by petitioner at trial. Petitioner filed no briefs in this case.↩
8. Cf. Kozma v. Commissioner,T.C. Memo 1986-177↩.
9. Because we find that no underpayment exists for 1979, there can be no addition to tax for fraud for 1979.↩